1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JAMAL DAMON HENDRIX,

                              Plaintiff,

        v.

KARA LEGRAND, *et al.,*

                              Defendants.

Case No. 2:22-cv-01402-ART_BNW

ORDER

*Pro se* Plaintiff Jamal Damon Hendrix, an inmate incarcerated in the custody of the Nevada Department of Corrections (NDOC), brings this civil rights action under 42 U.S.C. § 1983. In his original complaint, Plaintiff alleges various violations of his First, Eighth, and Fourteenth Amendment while incarcerated at Ely State Prison (ESP) and Lovelock Correctional Center (LCC). (ECF No. 1-1 at 1-11.) Plaintiff subsequently filed a Motion for Injunctive Relief, a Motion for a Temporary Restraining Order, and a Motion for Order to Show Cause for further alleged violations occurring at Southern Desert Correctional Center (SDCC).[1] (ECF Nos. 11-13.) Interested Party NDOC opposed all of the motions.[2] (ECF Nos. 15-17.) Plaintiff filed a Motion to Extend Time to file Replies and later filed his Reply. (ECF Nos. 30-31.) Without addressing the merits of Plaintiffs' motions, the Court will deny them without prejudice because the new claims lack a sufficient nexus with his initial claims. The Court advises Plaintiff that if he wishes to resubmit these claims, he must file a new action.

**I.      BACKGROUND**

    **a. Initial Complaint and Screening**

Plaintiff alleges multiple violations of his rights while in ESP and LCC's

---

[1] Plaintiff's motions are identical. For consistency, the Court will cite to ECF No. 11.
[2] NDOC filed the same Opposition to the three motions. For consistency, the Court will cite to ECF No. 15.

custody. He first claims that, on August 26, 2021, Officer Bashor pulled him out of line to conduct a body search while awaiting transport from ESP to LCC. (ECF No. 1-1 at 11.) Officer Bashor found legal documents with officers' names related to another lawsuit and threw away the documents. (*Id.* at 11-12.) He also demanded Plaintiff hand over his Islamic head covering (kufi), stated such items were not allowed during transfers, and threw it away, despite allowing a Jewish inmate to wear a yarmulke. (*Id.* at 12.) Officer Bashor called Sergeant Rigney to observe the trashing of these items, yet Sergeant Rigney did nothing to stop him. (*Id.* at 23.) Plaintiff alleges that Officer Bashor discriminated against him for his Islamic beliefs and retaliated against him for Plaintiff's lawsuit against his subordinates. (*Id.* at 12.)

Plaintiff discusses additional alleged violations that took place at LCC. On August 31, 2021, Plaintiff was temporarily housed in the infirmary in accordance with COVID-19 protocol. (*Id.*) The Law Library Supervisor, Bequette, and a housing unit caseworker, Ferro, came to have Plaintiff sign his legal documents. (*Id.*) Officer Martinez "yelled at [Plaintiff] in a degrading manner and provocative tone for [him] to get over to the cell door and sign the documents" when Plaintiff went to his desk to get a pen. (*Id.* at 13.) Plaintiff told Officer Martinez that he didn't like him, he needed to learn how to talk to people, and that Plaintiff planned to sue him. (*Id.*) Plaintiff claims that Officer Martinez wrote a disciplinary report in retaliation and told the other housing unit prisoners that "cell #4 is no good y'all, he's in jail for beating and raping an old lady so if you see him on the yard, get his blackass [sic]." (*Id.*) Plaintiff alleges that Officer Martinez violated his First and Eighth Amendment rights by putting him in danger of assault and retaliating against him for filing grievances and lawsuits. (*Id.*)

Plaintiff then recounts a third incident involving a medical emergency. On October 25, 2021, Plaintiff had an epileptic seizure in his cell. (*Id.* at 14.) Plaintiff alleges that the facility's electrician and his inmate assistant had purposely

dismantled the emergency call button in retaliation for filing grievances. Plaintiff had previously informed Sergeant Hughes and Housing Unit Senior Officers Orentez and Parker about the broken button, but they did not follow up after putting in work orders to fix it. (*Id.*) Plaintiff had also notified Associate Warden LeGrand of the broken emergency button. (*Id.*) Plaintiff alleges that these officials, acting in retaliation, failed to resolve his issue, leading to the denial of medical treatment. (*Id.* a 14-15.)

Plaintiff then explains an additional incident involving his cellmate and prison officials. On November 15, 2021, Plaintiff requested Officer Parker come get him from his cell after his cellmate wanted him to leave. (*Id.* at 15.) When Officer Parker didn't open the door, the cellmate got frustrated and attacked Plaintiff in the face, eyes, and lips, causing him to bleed. (*Id.*) Plaintiff alleges Officer Zysman had earlier told his cellmate that Plaintiff had snitched on Associate Warden LeGrand and Officer Martinez, leading him not to want to double cell with Plaintiff. (*Id.*) Approximately fifteen to twenty minutes later, Officer Zysman came to the cell door and ordered the cellmate to "[f]inish [Plaintiff] up," forcing Plaintiff to fight back in self-defense. (*Id.* at 15-16.) Officer Zysman then sprayed Plaintiff with a chemical agent without warning while he was already on the ground and the cellmate was already removed, and told Plaintiff, "You gonna stop writing grievances huh, you gonna stop?" (*Id.* at 16.) Officers ran into the cell and jumped on Plaintiff's neck and shoved his face to the ground, resulting in him having a swollen left eye, fractured nose, lacerated lips, and irritated skin, and needing seven stitches. (*Id.* at 16-17.)

Plaintiff further alleges that the facility's male medical provider and two female nurses were deliberately indifferent to his medical needs and retaliated against him for filing grievances following this incident. The young brunette nurse refused to attend to him while writing a report and unless Plaintiff told her what happened. (*Id.* at 17.) She then told Plaintiff, "Since you like writing grievances

on us, you can wait for the doctor." (*Id.*) She forced Plaintiff to wait more than an hour in pain while asking him questions. (*Id.*) The Medical Provider Marks placed seven stitches on the upper and bottom left side lips but "purposely failed to provide stitches to the outside of [his] lip which later that night began oozing pus and was bleeding." (*Id.* at 18.) The other nurse refused to give Plaintiff any antibiotics, Ibuprofen, gauge pads, ice packs, or peroxide, yet gave his cellmate a bottle of peroxide and antibiotics. (*Id.*) The nurse and doctor told Plaintiff "[he] wasn't getting anything because [he] deserved what [he] got." (*Id.*) Plaintiff claims that Medical Provider Marks, the nurses, Lieutenants Clark and Collier, Sergeant Mainwaring, and Officer Macias had all agreed to refuse Plaintiff treatment until he explained what had happened. (*Id.* at 18-19.) Afterwards, Officer Macias and Lieutenant Colter took him to the Infirmary's cell holding but a different officer in the holding area denied him a medical kite and pencil. (*Id.* at 19.) Later, this officer and the second nurse came to his cell door to look at his face wounds. (*Id.*) When asked if either would provide him pain medication and an ice pack, they both refused and said "[h]ell no." (*Id.* at 19-20.)

Plaintiff argues that LCC's Full Classification Committee, consisting of Associate Warden Henley, Associate Warden LeGrand, Caseworker Southworth, and Caseworker Stammerjohn, "all failed to properly screen [his] cellmate for compatibility before assigning him to [his] cell per NDOC classification policy." (*Id.* at 20.) Plaintiff's cellmate had been kicked out of the standard living program (SLP) run by Associate Warden LeGrand, and he claims Associate Warden LeGrand "purposely placed him in [his] cell to attack [him] in retaliation for [his] prison grievance [he] filed against her for not fixing [his] cell emergency call button in which [he] had a seizure." (*Id.*) Plaintiff alleges that Associate Warden LeGrand knew the cellmate was aggressive towards other prisoners, only eighteen years old, and had a mental illness. (*Id.*)

During the screening process, this Court dismissed some claims and allowed

others to proceed. The Court found that the following claims could proceed: 1) a claim of First Amendment retaliation against Officer Bashor and Sergeant Rigney for the first incident; 2) an equal protection claim against Officer Bashor and Rigney for the first incident; 3) Free Exercise Clause, RLUIPA, and Establishment Clause claims against Officer Bashor and Sergeant Rigney for the first incident; 4) a First Amendment retaliation claim against Officer Martinez for the second incident; 5) an Eighth Amendment claim for unsafe prison conditions against Officer Martinez for the second incident; 6) a claim for failure to intervene in constitutional violations against Caseworker Ferro and Law Library Supervisor Bequette for the second incident; 7) an Eighth Amendment deliberate indifference to serious medical needs claim against Sergeant Hughes and Associate Warden LeGrand for the third incident; 8) an equal protection claim against the facility's electrician and his inmate assistant for the third incident; 9) a failure to protect claim against Officer Parker for the fourth incident; 10) an Eighth Amendment excessive force claim against Officer Zysman for the fourth incident; 11) a First Amendment retaliation claim against Officer Zysman and the first nurse for the fourth incident; 12) an Eighth Amendment deliberate indifference to serious medical needs claim against Lieutenants Clark and Collier, Sergeant Mainwaring, Dr. Marks, the nurses, and Officer Macias for the fourth incident. (ECF No. 3 at 29-30.)

### b. Motions for Injunctive Relief, a Temporary Restraining Order, and an Order to Show Cause

Plaintiff later filed a motion for injunctive relief, a temporary restraining order, and an order to show cause following additional incidents while incarcerated at SDCC. Plaintiff alleges that various officials at SDCC limited his law library access, including access to indigent supplies, blank legal documents, copy requests, legal supplies, and case law check-outs. (ECF No. 11 at 1.) Plaintiff also claims the prison is preventing and/or delaying his ability to e-file

documents and mail out legal documents. (*Id.* at 1-2.) Plaintiff requested this Court order the relevant parties to appear in court to explain why the Court should not order a preliminary injunction and restraining order enjoining the Defendants from hindering and intercepting his legal mail, preventing him from receiving legal supplies, legal copies, caselaw, and other documents from the SDCC law library, and interfering with his ability to e-file. (*Id.* at 2-4.)

Interested Party NDOC opposes these motions on multiple grounds. First, NDOC argues that the restraining order and preliminary injunction were not narrowly tailored because the requests were open-ended because they required the prison to provide access to the courts and for multiple SDCC employees to appear in court. (ECF No. 15 at 5.) In addition, NDOC claims that "Hendrix has access to the law library, received caselaw, has caselaw that has not been returned, had appointments with the law library to pick up forms and e-filed documents, failed to attend law library appointments, and received multiple blank complaints, applications, administrative claim forms, and financial certificates." (*Id.*) Associate Warden Currier claims she found no credible evidence of anyone preventing Plaintiff from sending legal mail and declared that she has no ability to intercept his mail. (*Id.*) She also attests that Plaintiff must send a kite to the mail room for legal mail assistance, which he has failed to do. (*Id.* at 6.) NDOC also argues that Plaintiff's motions lack a sufficient nexus to his surviving claims because his original claims concern events that took place at different prisons from his current SDCC-based claims. (*Id.*)

NDOC further alleges that Plaintiff failed to address the *Winter* factors for a preliminary injunction and temporary restraining order. (*Id.*) NDOC denies that Plaintiff will face any irreparable injury absent injunctive relief since Defendants' declarations show he has access to the law library and Plaintiff has demonstrated his ability to send legal mail by sending the instant motions. (*Id.* at 7.) NDOC also argues that Plaintiff does not have a strong likelihood of success on the merits as

he did not administratively exhaust his claims and his medical records undermine his allegations (*Id.* at 2, 8.) Regarding whether a balance of hardships favor relief, Defendants claim that Plaintiff's interests do not outweigh the strong weight given to public safety and the operation of the criminal justice system. (*Id.* at 8-9.) NDOC further denies that any of the motions are in the public interest. (*Id.* at 9.)

Plaintiff challenges NDOC's analysis of the *Winter* factors. Plaintiff reiterates his claim that SDCC officials have hindered his access to the law library litigation supplies. (ECF No. 31 at 7-8.) In addition, Plaintiff emphasizes that NDOC failed to provide direct evidence that Plaintiff has been able to access the law library. (*Id.* at 9-10.) Plaintiff argues that he will face irreparable harm because he claims that Supervisor Espinoza refuses to send out or delays sending his E-filings. (*Id.* at 11.) Plaintiff then claims that the balance of hardships weigh in his favor and that he is likely to succeed on the merits because prison officials prevented him from exhausting his administrative remedies. (*Id.* at 12-14.) Lastly, Plaintiff argues that his requested relief serves the public interest because the public has an interest in officials obeying the law. (*Id.* at 14.)

## II.    LEGAL STANDARD

To succeed on a preliminary injunction motion, the movant "must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of harm tips in the movant's favor, and (4) that the injunction is in the public interest." *Chamber of Com. Of the U.S. v. Bonta*, 62 F.4th 473, 481 (9th Cir. 2023) (citing *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). "'The first factor-likelihood of success on the merits-is the most important factor.'" *Id.* (quoting *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020)) (en banc). "Additionally, when a party seeks a preliminary injunction against the government, as is the case here, the balance of equities and public interest factors merge." *Id.* (citing *Drakes Bay Oyster Co. v.*

*Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). "A temporary restraining order and a motion for an injunction are analyzed under the same standard[.]" *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 694 Fed.Appx. 561, 561 n.1 (9th Cir. 2017) (citing *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)).

For a district court to grant injunctive relief, there must exist "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pacific Radiation Oncology, LLC. V. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015)." "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally.'" *Id.* (quoting *De Beers Consol. Mines*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

### III.   DISCUSSION

Without considering the merits of the present motions, this Court cannot grant injunctive relief because the new claims lack a sufficient nexus to the underlying claims. Plaintiff's original complaint concerned multiple allegations of violations of Plaintiff's First, Eighth, and Fourteenth Amendment rights by ESP and LCC officials, while the current motions address subsequent allegations of SDCC officials interfering with his access to the courts and legal materials. (ECF Nos. 1-1 at 11-20; 11 at 1-4.) Plaintiff also does not seek the same relief in these motions. In his original complaint, Plaintiff requested compensatory and punitive damages against Defendants. (ECF No. 1-1 at 44-45.) In his present motions, Plaintiff seeks a preliminary injunction, a temporary restraining order, and an order to show cause. (ECF No. 11 at 1-4.) Thus, this Court lacks authority to grant Plaintiff his requested relief. If Plaintiff wishes to pursue these claims, he must file a separate action.

1

## IV.    CONCLUSION

2      It is ordered that Plaintiff's Motions for Injunctive Relief, a Temporary

3 Restraining Order, and an Order to Show Cause (ECF Nos. 11-13) are denied

4 without prejudice.

5      It is further ordered that ECF No. 30 is denied as moot in light of Plaintiff's

6 filing of ECF No. 31.

7

8      DATED THIS 20th day of September 2023.

9

10

11                                            _____

12                                            ANNE R. TRAUM
                                              UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28